IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 23-00096 HG-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CASEY YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER ON SENTENCING GUIDELINES**

On December 5, 2023, Defendant Casey Young was charged via Information with one count of Distribution of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(2), as follows:

> From a precise date unknown, but by at least as early as January 24, 2023 and continuing to at least on or about July 7, 2023, within the District of Hawaii and elsewhere, CASEY YOUNG, the defendant, knowingly distributed child pornography, involving a minor under the age of 12 years old, using any means and facility of interstate and foreign commerce, and that had been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.
>
> All in violation of Title 18, United States Code, Sections 2252A(a)(2)(A) and (b)(2).

(Information, ECF No. 13).

On December 14, 2023, Defendant consented to enter a guilty plea before a Magistrate Judge and agreed to waive indictment as to the one felony count in the Information.  (ECF Nos. 17, 18, 19).

On the same date, Defendant pled guilty to the one count in the Information before a Magistrate Judge pursuant to a

1

Memorandum of Plea Agreement.  (ECF Nos. 19, 20, 21).

On January 5, 2024, the Court accepted Defendant's plea of guilty, adjudicated him guilty, and set a date for sentencing. (ECF No. 22).

On January 12, 2024, the Court granted the Government's unopposed request to continue the sentencing date and sentencing was set for June 24, 2024.  (ECF No. 23).

On May 6, 2024, the Probation Officer filed the Draft Presentence Report.  (ECF No. 24).

On May 20, 2024, the Defendant filed his Sentencing Statement.  (ECF No. 25).

On the same date, the Government filed its Sentencing Statement.  (ECF No. 26).  The Government objected to the Probation Officer's calculation of the sentencing guidelines. The Government argued that Defendant should have received a 5-level enhancement pursuant to Section 2G2.2(b)(3)(B) for distributing child pornography for "any valuable consideration, but not for pecuniary gain."  (Id.)

On June 6, 2024, the Probation Officer filed the Presentence Investigation Report.  (ECF No. 27).  The Probation Officer declined to apply the 5-level enhancement pursuant to Section 2G2.2(b)(3)(B).  (Presentence Investigation Report at pp. 19-20, ECF No. 27).

On June 12, 2024, the Government filed a Motion.  (ECF No. 28).

On June 18, 2024, Defendant filed a Sentencing Memorandum

2

and Exhibits in support of his Memorandum.  (ECF Nos. 29, 30, 31).

On June 24, 2024, the Court held a hearing as to the Government's Objection to the Presentence Report's calculation of the Sentencing Guidelines, specifically as to the application of the 5-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(B). (ECF No. 32).  The Court continued the hearing to allow the Parties to put on evidence as to the application of the 5-level enhancement.  (Id.)

On July 10, 2024, the Court held the Continued Sentencing Hearing, which included testimony from FBI Special Agent Andrea Gordner.  (ECF No. 34).

On July 30, 2024, the Court issued a briefing schedule regarding the discrepancy in the statute citations in the record. (ECF No. 36).

On August 19, 2024, the Defendant and the Government filed Position Statements regarding the citation discrepancies.  (ECF Nos. 37, 38).

On October 9, 2024, the Court held a Continued Sentencing Hearing.  (ECF No. 40).  The Parties acknowledged the citation mistakes in the Information and the Memorandum of Plea Agreement. Both Parties indicated that there is no need to alter the Information or the Memorandum of Plea Agreement pursuant to Fed. R. Crim. P. 7(c)(2).

## ANALYSIS

**I.   Citation Discrepancies In The Information And Memorandum Of Plea Agreement**

On December 14, 2023, Defendant pled guilty to one count of Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(2).  (ECF Nos. 19, 21, 22).

Defendant pled guilty pursuant to a Memorandum of Plea Agreement signed and dated by the Parties on December 14, 2023. (ECF No. 20).  In Paragraph 1 of the Memorandum of Plea Agreement, it states that Defendant was charged in the Information "with violating Title 18, United States Code, Sections 2252A(a)(2)(A) and **(b)(2)**."  (Id. at ¶ 1, p. 2) (emphasis added).

The Memorandum of Plea Agreement states that, "The defendant agrees to waive indictment and enter a voluntary plea of guilty to the Information, which charges him with distribution of child pornography."  (Id. at ¶ 4, p. 2).

The Presentence Investigation Report does not cite to the same statutes as cited in the Information and the Memorandum of Plea Agreement.

The Presentence Investigation Report cites to 18 U.S.C. § 2252A(a)(2)(A) and **(b)(1)**, rather than subsection (b)(2) as cited in the Information and Memorandum of Plea Agreement. (Presentence Investigation Report at ¶ 1, p. 3; ¶ 75, p. 14, ECF No. 27) (emphasis added).

The Parties agree in their filings of August 19, 2024 (ECF Nos. 37, 38) that the Information and Memorandum of Plea Agreement contained typographical errors and should have cited to 18 U.S.C. § 2252A(b)(1) for the sentencing provision of the charge rather than 18 U.S.C. § 2252A(b)(2). (Def.'s Statement, ECF No. 37; Gov't Statement, ECF No. 38).

The Presentence Investigation Report properly cited to 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), rather than subsection (b)(2). (Presentence Investigation Report at ¶¶ 1, 75, ECF No. 27).

Pursuant to Federal Rule of Criminal Procedure 7(c)(2), "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."

The Parties agree that Defendant was not misled or prejudiced pursuant to Fed. R. Crim. P. 7(c)(2). The Parties agree that the Defendant was properly advised of the correct statutory sentencing range at his plea and in the Memorandum of Plea Agreement. The Parties agree that the citation errors in the Information and Memorandum of Plea Agreement have no bearing on the substantive charge or the merits of the case and that no alteration in the Information or the Memorandum of Plea Agreement is required.

5

## II.  Calculation Of Sentencing Guidelines

The Parties dispute the calculation of Defendant's sentencing guidelines.  Specifically, the Parties dispute whether Defendant is subject to a 5-level enhancement pursuant to Section 2G2.2(b)(3)(B) of the United States Sentencing Guidelines.

Pursuant to Section 2G2.2(b)(3)(B), a 5-level enhancement applies:

> [I]f the defendant distributed [child pornography] in exchange for any valuable consideration, but not for pecuniary gain.

> U.S.S.G. § 2G2.2(b)(3)(B).

The Parties agree that Defendant distributed child pornography.  The Parties dispute if Defendant distributed child pornography in exchange for any valuable consideration.

## III. Legal Standard And Burden Of Proof In Calculating Sentencing Guidelines

The District Court must consider all applicable United States Sentencing Guidelines provisions in calculating the guideline range for an offense.  United States v. Smith, 719 F.3d 1120, 1123 (9th Cir. 2013).

The District Court may apply all applicable specific offense characteristics to enhance the base level offense.  United States v. Williams, 693 F.3d 1067, 1075 (9th Cir. 2012).  In determining offense characteristics and adjustments, the Court is instructed to take into account both the offense of conviction and all relevant conduct as defined in U.S.S.G. § 1B1.3.  Id.

6

The preponderance of the evidence standard applies to determine the application of a sentencing enhancement under the United States Sentencing Guidelines.  <u>United States v. Lucas</u>, 101 F.4th 1158, 1162 (9th Cir. 2024) (en banc).

Here, the Government bears the burden to prove that the 5-level increase applies pursuant to U.S.S.G. § 2G2.2(b)(3)(B). <u>See</u> <u>United States v. Lonich</u>, 23 F.4th 881, 910 (9th Cir. 2022).

**IV.  Sentencing Enhancement For Distribution Of Child Pornography For Any Valuable Consideration Pursuant To U.S.S.G. § 2G2.2(b)(3)(B)**

    **A.   "Valuable Consideration" Under 2G2.2(b)(3)(B)**

In <u>United States v. Randall</u>, 34 F.4th 867, 869 (9th Cir. 2022), the Ninth Circuit Court of Appeals considered the text of Section 2G2.2(b)(3), which provides for a 5-level sentence enhancement if "the defendant distributed [child pornography] in exchange for any valuable consideration, but not for pecuniary gain."  U.S.S.G. § 2G2.2(b)(3)(B).

The Ninth Circuit Court of Appeals ruled that "valuable consideration" refers to the exchange of something of value, such as other child pornographic material, preferential access to child pornographic material, or access to a child.  <u>Randall</u>, 34 F.4th at 871 (citing U.S.S.G. § 2G2.2 cmt. n.1).

The Ninth Circuit Court of Appeals explained that there are three elements to an enhancement under Section 2G2.2(b)(3)(B):

    (1)   the defendant agreed to an exchange with another person;

7

    (2)   the defendant knowingly distributed child pornography
          to the other person; and

    (3)   the defendant's distribution was for the specific
          purpose of obtaining something of valuable
          consideration from the other person.

Randall, 34 F.4th at 873.

    The Ninth Circuit Court of Appeals explained that a
defendant need not actually receive the valuable consideration in
order for the 5-level enhancement to apply.  Id.  The appeals
court reasoned that the defendant need only "complete his end of
the bargain" and knowingly exchange child pornography with
another for the purpose of obtaining valuable consideration, even
if the consideration is not actually received.  Id. at 873-74.

    The Ninth Circuit Court of Appeals specifically held that a
defendant trading child pornography for other child pornography
constitutes "valuable consideration" and such an act is
sufficient for the 5-level enhancement to apply.  Id. at 874.

    **B.    Factual Stipulations In Defendant Young's Memorandum Of
           Plea Agreement**

    Defendant pleaded guilty pursuant to a Memorandum of Plea
Agreement that he entered into with the Government.  (ECF No.
20).

    In the Memorandum of Plea Agreement, Defendant admitted that
he downloaded and distributed thousands of images of child
pornography.  (Id. at p. 5).  The Parties dispute whether the
Defendant's distribution of child pornography was for "valuable
consideration" under Section 2G2.2(b)(3)(B).

8

The Government points to the factual stipulations in Defendant's Memorandum of Plea Agreement in support of its position that Defendant received valuable consideration in exchange for distributing child pornography.

Specifically, Defendant stipulated to the following facts:

8(a) Beginning on a date unknown, but by at least January 24, 2023, [Defendant Young] was a user on Wickr who was engaged on the application to actively participate in the receipt and distribution of child pornography. Wickr is an internet-based instant messaging application that allows users to exchange end-to-end encrypted and content-expiring messages. Within Wickr there is a network used to trade and discuss child pornography.

(b) On September 1, 2023, [the Federal Bureau of Investigation] executed a search warrant at [Defendant Young's] residence and seized [Defendant Young's iPhone] from his person.... [Defendant Young] used and maintained the Wickr application on his iPhone. [Defendant Young] also downloaded thousands of images and videos of child pornography onto a hidden folder on his iPhone that was synced to his iCloud account that allowed him to access this folder from his iPad. The folder contained thousands of images of child pornography, including at least one video involving the sexual abuse or exploitation of an infant.

(c) Wickr child pornography networks were broken down into rooms that were tailored to particular interests or types of child pornography. To join Wickr and its individual rooms, a moderator of the network would place the interested child pornography trader into the stand-alone vetting room whereby instructions were posted in the room for the interested trader to post a certain number and specific type of child pornography media files. If the room requirements were met by the trader, the moderator would add that trader to the room so that the trader could access the specific type of child pornography material posted and shared in the room and communicate with other traders. Besides vetting and adding traders,

among other things, moderators also had the
ability to remove traders from rooms.

(d)  Crackmonkey737 was [Defendant Young's] Wickr
username. [Defendant Young] was a member of two
child pornography themed networks.  Thus, anytime
he was using Wickr, he had access to thousands of
child pornography media files in the saved file
repositories as well as a daily stream of child
pornography in each network.  Furthermore,
[Defendant Young] was a moderator of a set of
child pornography trading rooms on Wickr,
including "Heavenly Teens" and "beast."

(e)  On or about January 24, 2023, in a specifically
tailored Wickr child pornography room, [Defendant
Young] distributed multiple videos/images of child
pornography of adult males engaged in sexually
explicit conduct with minors, some of which depict
minors that appear to be approximately 10 years
old or younger.  For example, [Defendant Young]
distributed a video, titled 43f4 25.mp4, that is
approximately 10 seconds in length, and another
video, titled IMG 2843.mp4, that is approximately
6 seconds in length....

(g)  On September 1, 2023, [Defendant Young] provided a
voluntary and Mirandized statement to the FBI.
Among other things, [Defendant Young] admitted
that his Wickr username was crackmonkey737, that
he used the Wickr application as recently as the
previous day, and agents observed that the Wickr
application was on [Defendant Young]'s cellphone.
[Defendant Young] also used, accessed, and was a
moderator on a similar application named Wire that
was stored on his cellphone to trade child
pornography.

(Memorandum of Plea Agreement at pp. 5-8, ECF No. 20).


## C.   Facts In Evidentiary Hearing

At the July 10, 2024 hearing, the Government provided

testimony in support of its argument that Defendant received

valuable consideration for the distribution of child pornography.

### 1.    Special Agent Gordner's Background And Expertise

Special Agent Andrea Gordner of the Federal Bureau of
Investigation ("FBI") testified at the hearing.  Special Agent
Gordner testified that she was the case agent for Casey Young's
investigation.  She works for the FBI in its cyber crime and
violent crimes against children divisions.

Special Agent Gordner explained that Defendant Young's
involvement in child pornography was discovered based on a lead
from another field office engaged in undercover activity on
internet platforms related to child pornography.  Special Agent
Gordner testified that she was involved with the undercover
investigation into Defendant Young, the drafting and execution of
search warrants for Defendant Young, the review of the evidence
recovered from the searches, the review of Defendant Young's
devices, and the takeover of the undercover investigation
following Defendant Young's arrest.

Special Agent Gordner testified that the undercover
investigation involved monitoring Defendant Young's activities on
the Wickr and Wire platforms.  Special Agent Gordner testified
that Wickr and Wire are very similar and both are end-to-end
encrypted applications which can be downloaded to either mobile
devices or desktop computers.  She explained that a Wickr or Wire
user is required to create a user profile to access the platforms
but in order to access child pornography on the platforms, a

multi-step process is required to access the material.

### 2.   The Multi-Step Vetting Process On Wickr And Wire

Special Agent Gordner explained the multi-step process as follows:

First, a Wickr or Wire user is required to engage in direct messaging with another user in order to access child pornography. Special Agent Gordner testified that there is a vetting process to gain access to the rooms that Defendant Young had access to on Wickr and Wire.  She explained that a user like Defendant Young is required to first message the moderator, and then the user would be placed in a vetting room.

Second, Special Agent Gordner testified that the user would then need to agree to send child pornography to the moderator on the platform to gain access to the child pornography network or room on the platform.  Special Agent Gordner testified that in the vetting room, the user will be required to send to the moderator two sample pictures or videos of the type of child pornography that is specific to the theme of the room.

Third, Special Agent Gordner testified that the moderator will review the sample child pornography sent by the user to ensure that it is within the topic of the room and decide whether to grant the user access to the room on the platform.  She testified that a moderator is always a person and is not some sort of automated bot or artificial intelligence tool.

Fourth, Special Agent Gordner testified that a user is

required to regularly post child pornography in the rooms in
order to maintain access.  She explained that moderators do not
allow a user to remain in a room and be a "lurker" and only
observe child pornography.  She testified that the moderators
require users to regularly distribute child pornography in the
rooms in order to keep preferential access to the child
pornography particular to that room.

Special Agent Gordner testified that re-vetting also occurs
where users are required to distribute child pornography with the
moderator to maintain access to a room.  She testified that
during her undercover investigations, she has been removed from
rooms on the platforms for not regularly posting child
pornography.

>    **3.   Defendant Young's Distribution Of Child
>          Pornography On Wickr And Wire In Order To Gain And
>          Maintain Access To Child Pornography**

Special Agent Gordner testified that in January 2023 and in
March 2023, the undercover investigator personally observed
Defendant Young distribute child pornography on the platforms
during the undercover investigation.  She testified that
Defendant's distribution would have been required to allow
Defendant to maintain access to child pornography in the rooms.

Special Agent Gordner testified that she took over Defendant
Young's account on the platforms using his user name
"crackmonkey737" after he was arrested.  She testified that at
the time of Defendant Young's arrest he was a member of

approximately 26 rooms for distributing child pornography on Wire.  Special Agent Gordner testified that Defendant Young was a member of approximately 50 rooms for distributing child pornography on Wickr.

Special Agent Gordner testified that Defendant was a moderator of nine rooms on Wire.  She testified that Defendant was a moderator of four rooms on Wickr.

Special Agent Gordner stated that she attempted to gain access to certain child pornography rooms on the platforms without providing child pornography to the moderator but that she was not granted access.

### D.    Defendant Received Valuable Consideration For Distribution Of Child Pornography

The Government contends that Defendant distributed the child pornography for "any valuable consideration" and that U.S.S.G. § 2G2.2(b)(3)(B) applies.

The Government asserts the valuable consideration in this case is two things: (1) other child pornography and (2) preferential access to child pornography on the Wickr and Wire platforms.  The Government explained that the platforms allowed Defendant to trade more child pornography, engage with other persons interested in the same types of child pornography, and act as a moderator of child pornography on Wickr and Wire.

There can be no dispute that trading child pornography for other child pornography or for preferential access to child

pornography constitutes "valuable consideration" pursuant to Section 2G2.2(b)(3)(B). Randall, 34 F.4th at 873-74.

Here, the evidence in the record demonstrates by a preponderance of the evidence that the 5-level enhancement pursuant to Section 2G2.2(b)(3)(B) applies. The evidence demonstrates that Defendant was well-acquainted with the Wickr and Wire sites and how they work, and that he frequently used the platforms to trade child pornography for other child pornography. He also used the platforms in order to maintain and gain access to specific child pornography rooms on the Wickr and Wire sites. The evidence also demonstrates that Defendant's use of the sites was so extensive that he had access to approximately 76 rooms and was permitted to become a moderator of more than a dozen child pornography rooms on the platforms.

As explained above, there are three elements to an enhancement under Section 2G2.2(b)(3)(B):

    (1) the defendant agreed to an exchange with another person;

    (2) the defendant knowingly distributed child pornography to the other person; and

    (3) the defendant's distribution was for the specific purpose of obtaining something of valuable consideration from the other person.

Randall, 34 F.4th at 873. Pursuant to the test in Randall, 34 F.4th at 873-74, all three elements of the Section 2G2.2(b)(3)(B) enhancement apply.

First, the record demonstrates that Defendant agreed to exchange child pornography with another Wickr or Wire user in

15

order to gain access to the rooms on the platforms.  In the
Memorandum of Plea Agreement, Defendant admitted to the manner in
which an interested child pornography user on Wickr is required
to gain access to child pornography on the site.

Defendant admitted in the Memorandum of Plea Agreement that
Wickr required an interested child pornography trader, such as
Defendant, to agree to distribute child pornography in order to
gain access to rooms in order to receive other child pornography.
(Memorandum of Plea Agreement at ¶ 8c, ECF No. 20).

The testimony of Special Agent Gordner explained the process
of vetting to get access to the networks and the rooms on the
platforms.  She stated that a user seeking access to a room would
be required to be vetted by the moderator who was an actual
person.  During the vetting process, the user would be required
to agree to send child pornography to the moderator to gain
access to the room.

Special Agent Gordner testified that re-vetting also
occurred for a user to maintain access to the rooms.  She
explained that a user could not simply observe the room but would
need to regularly distribute child pornography in order to
maintain access to the room.

Defendant does not dispute the testimony of Special Agent
Gordner or that such an agreement is generally required to gain
access to child pornography on the platforms.

Defendant admitted in the Memorandum of Plea Agreement that
an "interested child pornography trader on Wickr would be placed

16

into the stand-alone vetting room whereby instructions were posted in the room for the interested trader to post a certain number and specific type of child pornography media files." (Memorandum of Plea Agreement at ¶ 8c, ECF No. 20).

Defendant admitted that only after child pornography distribution by the trader would the moderator add that trader to the room so that the trader could access the specific type of child pornography material posted and shared in the room and communicate with other traders.  (Id.)

Second, the evidence demonstrates that Defendant knowingly distributed child pornography on Wickr and Wire.  Defendant pled guilty to distributing child pornography.  Defendant admitted in the Memorandum of Plea Agreement he was a user on Wickr who engaged on the application to actively participate in the receipt and distribution of child pornography.  (Memorandum of Plea Agreement at ¶ 8a, ECF No. 20).  He admitted that he maintained the Wickr application on his iPhone and that he downloaded thousands of images and videos of child pornography onto a hidden folder on his iPhone that was synced to his iCloud account that allowed him to access this folder from his iPad.  The folder contained thousands of images of child pornography, including at least one video involving the sexual abuse or exploitation of an infant.  (Id. at 8b).

Defendant also admitted that he "used, accessed, and was a moderator on a similar application named Wire that was stored on his cellphone to trade child pornography."  (Id. at 8g).

17

Special Agent Gordner testified that the undercover investigator observed Defendant distribute child pornography to other users on the Wickr and Wire platforms during the undercover investigation.

Third, Defendant's distribution was for the specific purpose of obtaining other child pornography and access to specific rooms on Wickr.  Defendant admitted in the Memorandum of Plea Agreement that he was a member of two child pornography themed networks on Wickr.  (Id. at ¶ 8d).

Defendant admitted that he received valuable consideration by trading child pornography to gain access to the Wickr rooms. Defendant stipulated in his Memorandum of Plea Agreement that once admitted to the rooms in Wickr "he had access to thousands of child pornography media files in the saved file repositories as well as a daily stream of child pornography in each network." (Id. at ¶ 8d).

Special Agent Gordner testified that at the time of his arrest, Defendant Young had access to approximately 76 rooms on the platforms and was permitted to become a moderator of more than a dozen child pornography rooms.  She testified that his distribution of child pornography with the moderators was required both to gain access and to maintain access to the rooms.

The evidence proves by a preponderance of the evidence that Defendant distributed child pornography in order to become a moderator for child pornography trading rooms on Wickr. Defendant admitted in the Memorandum of Plea Agreement the manner

18

in which a person becomes a moderator for Wickr by exchanging child pornography and admitted that he "was a moderator of a set of child pornography trading rooms on Wickr, including 'Heavenly Teens' and 'beast.'" (Id. at ¶ 8d).

The Government has demonstrated by a preponderance of the evidence that Defendant traded child pornography on the Wickr and Wire platforms in exchange for other child pornography, to gain access to rooms on the platforms, and to maintain access to child pornography on the platforms.  Defendant also traded child pornography in order to become a moderator which allowed him to vet and add traders, among other things.

Defendant does not appear to dispute any of the testimony of Special Agent Gordner about the manner users gain and maintain access to child pornography on Wickr and Wire.  Defendant, instead, appears to argue that direct evidence of the specific messages that Defendant made with the moderators of the rooms is required for the sentencing enhancement to apply.  The Court disagrees.  It is well-established that a Court may rely on circumstantial evidence to find facts supporting a sentencing enhancement.  See United States v. Newhoff, 627 F.3d 1163, 1170 (9th Cir. 2010); United States v. Preciado, 506 F.3d 808, 810-11 (9th Cir. 2007); United States v. Marin-Cuevas, 147 F.3d 889, 895 (9th Cir. 1998).

Additionally, Defendant's reliance on the case United States v. Morehouse, 34 F.4th 381 (4th Cir. 2022) is misplaced.  The holding in Morehouse is not binding as it is an out-of-circuit

opinion.  In addition, the reasoning in <u>Morehouse</u> was expressly rejected by the Ninth Circuit Court of Appeals in <u>United States v. Randall</u>, 34 F.4th 867, 869 (9th Cir. 2022).

<u>Morehouse</u> held that a "two-sided exchange" is required for Section 2G2.2(b)(3)(B) to apply.  The Ninth Circuit Court of Appeals in <u>Randall</u> rejected the "two-sided exchange" interpretation of the sentencing guideline.  The Ninth Circuit Court of Appeals in <u>Randall</u> held that a defendant need only "complete his end of the bargain" and knowingly exchange child pornography with another for the purpose of obtaining valuable consideration, even if the consideration is not actually received.  <u>Id.</u> at pp. 873-74.

The facts in <u>Morehouse</u> are also readily distinguishable from the case here.  <u>Morehouse</u> primarily involved Snapchat, a very different application than that of Wickr and Wire.  The defendant in <u>Morehouse</u> possessed fewer than ten images on his phone, unlike the thousands of images and videos of child pornography in this case.  The decision in <u>Morehouse</u> provides little information in the record as to the defendant's actual use of Wickr in that case.  There does not appear to be information as to the manner in which the application is used and there was no analysis as to the vetting process required to gain access to child pornography on the platform.

Here, Defendant Young stipulated to the manner in which a user gains access to child pornography on Wickr and Wire. Defendant admitted to his own use of the platforms, his

distribution of child pornography on the platforms, and his status as a moderator of child pornography rooms on the platforms.  In addition, there was testimony from Special Agent Gordner who explained the Defendant's deep involvement in child pornography on the platforms, her personal knowledge of Defendant's distribution of child pornography on the platforms, and her knowledge and experience regarding the basis by which moderators grant and maintain the users' access on the platforms.

It is a reasonable inference that Defendant agreed to distribute child pornography with a moderator to gain or to maintain access to at least one of the 76 rooms for which Defendant was a member of the child pornography rooms on Wickr and Wire.

The sentencing enhancement pursuant to Section 2G2.2(b)(3)(B) applies.

## CONCLUSION

A 5-level increase pursuant to U.S.S.G. § 2G2.2(b)(3)(B) for distribution of child pornography for any valuable consideration, but not for pecuniary gain, applies.

Defendant's Sentencing Guideline calculations in the Presentence Report on pages 7 and 8 are modified as follows:

Base Offense Level pursuant to Section 2G2.2(a)(2) is **22**

Specific Offense Characteristics pursuant to 2G2.2(b)(2) for material involving a prepubescent minor or minor who had not attained the age of 12 years is **+2**

Specific Offense Characteristics pursuant to

21

| | |
|---|---|
| 2G2.2(b)(3)(B) for distribution for any valuable consideration, but not for pecuniary gain, is | **+5** |
| Specific Offense Characteristics pursuant to 2G2.2(b)(4)(B) for material that portrayed sexual abuse or exploitation of an infant or toddler is | **+4** |
| Specific Offense Characteristics pursuant to 2G2.2(b)(6) for use of a computer is | **+2** |
| Specific Offense Characteristics pursuant to 2G2.2(b)(7)(D) for the offense involving 600 or more images of child pornography is | **+5** |
| Acceptance of Responsibility pursuant to 3E1.1(a) | **-2** |
| Acceptance of Responsibility pursuant to 3E1.1(b) | **-1** |
| **Total Offense Level:** | <u>**37**</u> |
| **Criminal History Category:** | **I** |
| **Guideline Provisions:** | **210-262 months** |

DATED: October 10, 2024, Honolulu, Hawaii.

IT IS SO ORDERED.

Helen Gillmor
United States District Judge

United States v. Casey Young; Crim. No. 23-00096 HG-01; **ORDER ON SENTENCING GUIDELINES**

22